Osvaldo A. Vargas (SBN: 312214)
VARGAS LAW FIRM
100 N. Citrus St., Suite# 505
West Covina, CA 91791
Phone: (626) 269-3432
Fax: (626) 364-7597
Email: ovargaslaw@gmail.com

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SERGIO PEREZ-OROZCO,<br><br>*Petitioner,*<br><br>vs.<br><br>WARDEN of Desert View Facility; ERNESTO SANTACRUZ, in his official capacity as Los Angeles Field Office Director, U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations; TODD LYONS, Acting Director of U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, in his official capacity as Secretary of the Department of Homeland Security; and TODD BLANCHE, in his official capacity as U.S. Attorney General,<br><br>*Respondents.* | Case No.:<br><br>**PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241;**<br><br>**VERIFIED PETITION**<br><br>**PETITIONER'S DHS NO:**<br>A 248-004-711 |

## I. INTRODUCTION

1. Petitioner Sergio Perez-Orozco ("Petitioner" or "Mr. Perez-Orozco") petitions this Court for a writ of habeas corpus under 28 U.S.C. § 2241, seeking immediate release from his unlawful civil immigration detention at the Desert View Facility, 10450 Rancho Road, Adelanto, California 92301.

2. This case challenges the legality of Petitioner's initial warrantless arrest by United States Immigration and Customs Enforcement ("ICE") officers on August 30, 2026, the failure to establish compliance with Congress's express statutory prerequisites for such an arrest, and the resulting deprivation of Petitioner's liberty without the procedural safeguards applicable to civil immigration detention under 8 U.S.C. § 1226(a).

3. The writ of habeas corpus exists to provide judicial review when the Executive Branch deprives a person of liberty without lawful authority. "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention." *INS v. St. Cyr*, 533 U.S. 289, 301 (2001).

4. Petitioner is a 57-year-old Mexican national who entered the United States without inspection in approximately October 2002. He has lived in this country continuously for approximately twenty-four years, establishing a home, engaging in landscaping and other labor, and developing substantial family and community ties. (Declaration of Sergio Perez- (Perez-Orozco Decl. ¶¶ 1–4.)

5. On August 30, 2026, Petitioner was parked at a car wash in Victorville, California, when four immigration officers approached his vehicle. They were not conducting an investigation directed at him. Rather, ICE's own contemporaneous Form I-213 establishes that officers were conducting an enforcement operation to locate and apprehend an entirely different individual, Jefferson Garcia-Alvizures. (Perez-Orozco Decl. ¶¶ 5–7, 10; Ex. A. Form I-213)

6. The officers showed Petitioner a photograph of another man and asked whether he was the person depicted or knew him. Petitioner denied being that individual and explained that he did not know the person shown. He provided his driver's license when requested and answered the officers' subsequent questions concerning citizenship and immigration status. (Perez-Orozco Decl. ¶¶ 7–8.)

7. Petitioner did not drive away, attempt to run, physically resist, threaten officers, or engage in violent conduct. Officers nevertheless directed him out of his truck, placed him in handcuffs, and arrested him. They did not present him with an administrative or judicial arrest warrant. (Perez-Orozco Decl. ¶¶ 8–9.)

8. Congress has established strict limitations on civil immigration arrests without a warrant. Under 8 U.S.C. § 1357(a)(2), an immigration officer may conduct a warrantless arrest only when the officer has reason to believe both that the individual is unlawfully present and that the individual is likely to escape before an arrest warrant can be obtained. The governing regulation similarly provides that

an immigration arrest warrant must be obtained unless that escape-related requirement is satisfied. 8 C.F.R. § 287.8(c)(2)(ii).

9. ICE's Form I-213 does not identify a preexisting warrant authorizing Petitioner's arrest. Nor does its narrative identify particularized circumstances establishing that Petitioner was likely to escape before such a warrant could be obtained. Instead, it describes an encounter with a person who was not the intended target, the officers' questioning, Petitioner's alleged admission concerning his immigration status, and his subsequent arrest. (Ex. A.)

10. This Court recently considered an exceptionally similar case in *Barrios Chan v. Acting Warden, Adelanto ICE Processing Center*, No. 5:26-cv-04820-ACCV, Dkt. 12 (C.D. Cal. Sept. 25, 2026). There, immigration officers encountered an individual seated in a vehicle while looking for someone else, questioned him, and arrested him without establishing the statutory prerequisites for a warrantless arrest. The court held that the arrest violated 8 U.S.C. §§ 1226(a) and 1357(a)(2) and ordered immediate release.

11. Even more recently, in *Sanchez Marquez v. Warden*, No. 5:26-cv-05368-MBK, Dkt. 13 (C.D. Cal. Oct. 1, 2026), the court ordered the immediate release of a Mexican national detained at Desert View who entered without inspection around 2002 and was arrested during an ICE operation targeting another individual. The court found that ICE failed to establish the necessary warrantless-arrest justification and failed to demonstrate that it had provided the initial individualized custody determination required under the statutory and regulatory framework.

12. Those decisions are closely relevant here. Petitioner was apprehended during an operation targeting someone else; he had lived in the interior of the country for approximately twenty-four years; and the government records presently available to him do not establish a lawful basis for dispensing with the administrative warrant requirement.

13. Petitioner's detention is also governed by the Ninth Circuit's published decision in *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026). That decision holds that noncitizens present

without admission who are apprehended in the interior of the United States fall under the detention framework of 8 U.S.C. § 1226 rather than the general mandatory detention framework of § 1225(b)(2)(A), subject to any independently applicable mandatory-detention provision.

14. DHS charged Petitioner in removal proceedings solely under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), alleging presence without admission or parole. DHS did not allege a criminal ground of inadmissibility in the Notice to Appear. Moreover, its own Form I-213 expressly reports that Petitioner has no criminal convictions and records negative results from multiple government database checks. (Exs. A–B.)

15. Petitioner relies upon the actual detention grounds and factual representations contained in DHS's records. If Respondents contend that a separate statutory provision requires his detention, they must identify that provision and substantiate its applicability.

16. Petitioner acknowledges that he has not requested a bond hearing before an immigration judge. The absence of a bond request, however, does not resolve the independent statutory question whether ICE possessed lawful authority to arrest Petitioner without a warrant in the first instance. Nor does it establish that DHS complied with the separate requirements governing the initial custody determination following an immigration arrest.

17. Petitioner challenges the lawfulness of his physical detention, not merely the discretionary outcome of a prospective bond proceeding. A belated opportunity to seek bond does not necessarily cure an unlawful initial arrest or the failure to afford procedures required at the outset of custody.

18. Petitioner therefore requests that this Court exercise its habeas jurisdiction, require Respondents to establish the legal basis for his arrest and detention, and issue a writ ordering his immediate release.

19. Alternatively, if the Court concludes that a custody hearing rather than immediate release is the appropriate remedy, Petitioner seeks prompt individualized review under § 1226(a), without application of an unauthorized categorical no-bond rule.

## II. CUSTODY

20. Petitioner is in the physical custody of the Respondents. Petitioner is detained at the Desert View Facility located at 10450 Rancho Road, Adelanto, CA 92301, (760) 246-1171.

## III. JURISDICTION AND VENUE

21. This Court has jurisdiction under 28 U.S.C. § 2241(a) and (c)(3), which authorize federal district courts to issue writs of habeas corpus when a petitioner is in custody in violation of the Constitution or laws of the United States.

22. Federal habeas jurisdiction extends to claims challenging unlawful civil immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001); *Jennings v. Rodriguez*, 583 U.S. 281, 293–95 (2018).

23. The Suspension Clause of the United States Constitution protects the availability of habeas review of unlawful executive detention. U.S. Const. art. I, § 9, cl. 2.

24. Petitioner is physically confined at the Desert View Facility in Adelanto, San Bernardino County, California, within the Central District of California. The Warden of Desert View Facility exercises immediate physical custody over Petitioner and is therefore a proper habeas respondent. *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

25. The remaining Respondents are named in their official capacities because they exercise relevant legal or supervisory authority concerning immigration detention and the implementation of the requested relief.

26. Venue is proper in this District because Petitioner is physically detained here, his immediate custodian is located here, and his August 30, 2026 arrest occurred in Victorville, California.

27. Petitioner challenges the legality of his initial civil immigration arrest and present detention. The jurisdictional limitations contained in 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1252(g) do not categorically preclude such independent detention claims. *Jennings*, 583 U.S. at 293–95; *Gonzalez v. U.S. Immigration & Customs Enforcement*, 975 F.3d 788, 810–11 (9th Cir. 2020).

28. Likewise, § 1226(e) does not bar judicial review of the constitutional and statutory questions presented here. Petitioner challenges the legal authority for his detention rather than asking this Court to substitute its judgment for an immigration judge's discretionary bond determination.

## IV. REQUIREMENTS OF 28 U.S.C. § 2243

29. The Court must grant the petition for writ of habeas corpus or issue an order to show cause (OSC) to the respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require respondents to file a return "within *three days* unless for good cause additional time, not exceeding twenty days, is allowed." *Id.* (emphasis added).

30. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v I.N.S.*, 208 F. 3d 1116, 1120 (9th Cir. 2000) (Citation omitted).

## V. PARTIES

***Petitioner***

31. Petitioner Sergio Perez-Orozco, A248-004-711, is a 57-year-old Mexican national presently detained at Desert View Facility in Adelanto, California.

***Respondents***

32. Respondent Warden, Desert View Facility, exercises immediate physical custody over Petitioner and is responsible for implementing any order directing his release.

33. Respondent Ernesto Santacruz is the Field Office Director of the ICE Enforcement and Removal Operations (ERO) Los Angeles Field Office and is the federal agent charged with overseeing all ICE

detention centers in Los Angeles District, including the Desert View Facility in Adelanto, California. Mr. Santacruz is a legal custodian of Petitioner. Respondent Santacruz is sued in his official capacity.

34. Respondent Todd Lyons is the Acting Director and Senior Official Performing the Duties of the Director of ICE. Respondent Lyons is responsible for ICE's policies, practices, and procedures, including those relating to removal procedures and the detention of immigrants during their removal procedures. Respondent Lyons is a legal custodian of Petitioner. Respondent Lyons is sued in his official capacity.

35. Respondent Markwayne Mullin is the Secretary of the U.S. Department of Homeland Security (DHS). DHS oversees ICE, which is responsible for administering and enforcing the immigration laws. Secretary Mullin is the ultimate legal custodian of Petitioner. Respondent Mullin is sued in his official capacity.

36. Todd Blanche is the Attorney General of the United States. He is responsible for the Department of Justice. The Executive Office for Immigration Review, which is comprised of the Board of Immigration Appeals and immigration courts, is a component agency of DOJ. Respondent Blanche is sued in his official capacity.

## VI. FACTUAL BACKGROUND

**A.) Petitioner's Residence, Family, and Employment**

37. Petitioner entered the United States without inspection in October 2002 and has resided continuously in this country for approximately twenty-four years. This was his only entry into the United States. Before the arrest challenged in this Petition, he had never been detained by Immigration and Customs Enforcement ("ICE") or the United States Border Patrol and had never previously been placed in immigration court proceedings. (Declaration of Sergio Perez-Orozco ("Perez-Orozco Decl.") ¶ 2.)

38. Before his arrest, Petitioner resided at 16687 Lynn Street, Apartment 3, Victorville, California 92395, where he had rented a room for approximately four years. He resided there with his landlord, Gabriel. (Perez-Orozco Decl. ¶ 4.)

39. Petitioner supported himself by operating a small landscaping and gardening business. In connection with that work, he used a white Ford F-150 pickup truck carrying landscaping and construction tools, including shovels, picks, rakes, and wheelbarrows. The truck displayed a sign advertising his landscaping and gardening services. (Perez-Orozco Decl. ¶ 4.)

40. Petitioner has substantial family connections in the United States. His mother, María, is a United States citizen, and his sister, Paty, is a lawful permanent resident. Both reside in Northern California. Petitioner is a widower. (Perez-Orozco Decl. ¶ 3.)

41. Petitioner's longstanding residence, established home address, self-employment, and family relationships are relevant to an individualized assessment of his likelihood of appearing for future immigration proceedings. Petitioner states that he is willing to attend all immigration court hearings and comply with any lawful conditions of release. (Perez-Orozco Decl. ¶¶ 2–4, 12.)

42. Petitioner's employment required the regular use of a truck carrying landscaping equipment. His presence at a car wash on August 30, 2026, was consistent with his ordinary use and maintenance of that work vehicle. Petitioner had not begun washing his truck when immigration officers approached him. (Perez-Orozco Decl. ¶¶ 4–6.)

**B.) ICE Was Conducting an Operation Targeting Another Individual**

43. On Sunday, August 30, 2026, ICE Enforcement and Removal Operations officers conducted a targeted enforcement operation in Victorville, California. According to the government's Form I-213, their intended enforcement target was Jefferson Garcia-Alvizures, an individual other than Petitioner. (Ex. A, Form I-213.)

44. Petitioner was not the individual whom ICE officers were seeking. He states that he did not know Jefferson Garcia-Alvizures and had no connection to him. Petitioner learned the identity of the intended target afterward, through the immigration records associated with his case. (Perez-Orozco Decl. ¶ 10; Ex. A.)

45. On the morning of August 30, 2026, Petitioner drove his white Ford F-150 pickup truck to a car wash near the intersection of Mojave Road, Verde Street, and Hesperia Road in Victorville, California. The government's Form I-213 identifies the encounter as occurring at approximately 9:20 a.m. in the vicinity of 14250 Hesperia Road. (Perez-Orozco Decl. ¶ 5; Ex. A.)

46. As Petitioner was parking his truck at the car wash, he observed a white sport utility vehicle approach his vehicle. Approximately four officers—three men and one woman—approached Petitioner's truck. Some of the officers wore tactical vests and face coverings. (Perez-Orozco Decl. ¶ 6.)

47. Before questioning Petitioner about his United States citizenship or lawful permanent resident status, the officers surrounded his truck and moved around it. Petitioner turned off the truck's engine and remained inside. The officers approached him before he had begun washing his vehicle. (Perez-Orozco Decl. ¶ 6.)

48. Petitioner states that, because the officers had surrounded his vehicle, he did not believe he was free to drive away or terminate the encounter. The officers' positioning around the truck occurred before Petitioner made any statements concerning citizenship or immigration status. (Perez-Orozco Decl. ¶ 6.)

49. One officer knocked on Petitioner's window. Petitioner partially lowered it and asked why the officers were stopping him. The officers did not initially tell Petitioner that they suspected him of any immigration violation. Instead, an officer displayed a small color photograph of a man whom Petitioner did not recognize. The officer asked whether Petitioner was the person depicted or knew him. Petitioner answered that he was not that person and did not know him. (Perez-Orozco Decl. ¶ 7.)

50. The officers then requested Petitioner's identification. Petitioner complied and provided his driver's license. Only after reviewing the identification did the officers ask whether Petitioner was a United States citizen or lawful permanent resident. Petitioner answered that he was neither and identified himself as Mexican. (Perez-Orozco Decl. ¶ 8.)

51. The officers thereafter directed Petitioner to open the truck door and exit the vehicle. Petitioner complied. The officers placed him in handcuffs. Because Petitioner had a preexisting right-arm and shoulder injury limiting his ability to raise his arm, the officers handcuffed him in front rather than behind his back. (Perez-Orozco Decl. ¶ 8.)

52. Throughout the encounter, Petitioner did not attempt to drive away, run, physically resist, or engage in violent or evasive conduct. He cooperated with the officers' requests and directions. (Perez-Orozco Decl. ¶¶ 8–9.)

53. Before taking Petitioner into custody at the car wash, the officers did not show him an administrative or judicial arrest warrant. Petitioner does not claim to possess personal knowledge of whether an administrative warrant had been issued but not shown to him. His testimony establishes that no warrant was presented to him during the encounter. (Perez-Orozco Decl. ¶ 9.)

54. The government's Form I-213 characterizes the encounter as consensual and reports that Petitioner acknowledged his immigration status. (Ex. A.) Petitioner disputes the characterization of the encounter as consensual insofar as he states that approximately four officers had already surrounded his truck, causing him to believe he was not free to leave, before the officers questioned him concerning citizenship or immigration status. (Perez-Orozco Decl. ¶¶ 6–8.)

55. The sequence described in Petitioner's declaration is material to determining when the encounter became a nonconsensual seizure. In particular, Petitioner states that officers surrounded and moved around his vehicle before obtaining his responses concerning citizenship and immigration status. Whether those circumstances constituted a seizure, and whether the officers possessed individualized reasonable suspicion when the alleged seizure began, are disputed legal and factual questions requiring evaluation of the totality of the circumstances. (Perez-Orozco Decl. ¶¶ 6–8; Ex. A.)

56. Following his arrest, Petitioner was transported to immigration detention in Adelanto, California. He remains confined at the Desert View Facility. (Perez-Orozco Decl. ¶¶ 9, 11.)

**C.) DHS's Own Arrest Records Do Not Identify a Particularized Escape Justification**

57. The government's Form I-213 identifies ICE's intended enforcement target, describes the encounter with Petitioner, records his responses to questioning, and summarizes database checks conducted in connection with his apprehension. (Ex. A.)

58. The Form I-213 does not identify specific, individualized observations demonstrating that Petitioner was likely to escape before an administrative arrest warrant could be obtained. Nor does the narrative identify a Form I-200 issued for Petitioner before officers took him into custody. The absence of such information from the presently available records does not conclusively establish that no warrant existed or that the officers possessed no additional information. Those are material questions requiring examination of Respondents' contemporaneous records. (Ex. A.)

59. The I-213 contains a reference to a warrant of arrest and Notice to Appear in describing the administrative disposition of Petitioner's case. That reference, without the underlying warrant and issuance records, does not establish whether an administrative arrest warrant had been issued before Petitioner's physical arrest on August 30, 2026. (Ex. A.)

60. Petitioner therefore requests production of any Form I-200 issued in his name, together with its creation, approval, and issuance timestamps and any contemporaneous records identifying the facts relied upon to justify a warrantless arrest under 8 U.S.C. § 1357(a)(2).

61. The government's Form I-213 expressly reports that body-worn-camera footage was recorded during the August 30, 2026 enforcement activity. (Ex. A.) That footage is material to determining: (1) when the officers approached and surrounded Petitioner's truck; (2) the officers' positions and movements around the vehicle; (3) whether the circumstances constituted a nonconsensual investigatory seizure; (4) the questions asked and the order in which they were asked; (5) whether the officers observed conduct suggesting that Petitioner was likely to escape before a warrant could be obtained; and (6) whether any contemporaneous statements or actions reveal the officers' reasons for selecting Petitioner for investigation. (Perez-Orozco Decl. ¶¶ 6–9; Ex. A.)

62. Petitioner requests preservation of the body-worn-camera recordings and associated contemporaneous arrest records. To the extent necessary to resolve material factual disputes, Petitioner seeks leave to request appropriately limited discovery upon a showing of good cause. See Rule 6(a), Rules Governing Section 2254 Cases, applicable to appropriate § 2241 proceedings through Rule 1(b); Bracy v. Gramley, 520 U.S. 899, 908–09 (1997).

**D.) DHS Initiated Ordinary Removal Proceedings**

63. On August 31, 2026, DHS issued a Notice to Appear charging Petitioner under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), based upon his alleged presence in the United States without admission or parole. (Ex. B, Notice to Appear.)

64. The Notice to Appear charges inadmissibility based on presence without admission or parole. It does not separately charge a criminal ground of inadmissibility under INA § 212(a)(2). (Ex. B.)

65. DHS's Form I-213 states that Petitioner has no criminal convictions and reports negative results from specified government database checks conducted on August 30, 2026. Petitioner attributes those representations to DHS's own contemporaneous record rather than asserting that the I-213 independently resolves the immigration consequences of any other proceeding. (Ex. A.)

66. On September 18, 2026, Petitioner's immigration counsel filed written pleadings in removal proceedings, identifying his approximate October 2002 entry date and indicating an intention to seek cancellation of removal under INA § 240A(b). Petitioner's declaration independently identifies October 2002 as the date of his entry. (Ex. C, Written Pleadings; Perez-Orozco Decl. ¶ 2.)

67. The immigration court subsequently issued a notice scheduling a master calendar hearing for October 13, 2026. (Ex. D, Hearing Notice.) The notice establishes the scheduled hearing but does not, standing alone, establish the outcome of that hearing or the date of any subsequent proceeding.

68. This Petition challenges the legality of Petitioner's initial investigatory seizure, his subsequent civil immigration arrest, and his continued detention. Petitioner does not seek, through this habeas

proceeding, adjudication of the merits of his application for immigration relief or review of a removal determination.

69. Petitioner has remained continuously in ICE custody since August 30, 2026. He is presently confined at the Desert View Facility, 10450 Rancho Road, Adelanto, California 92301. As of October 21, 2026, he has been detained for approximately fifty-two days. Petitioner states that he is willing to attend all immigration court hearings and comply with lawful conditions of release. (Perez-Orozco Decl. ¶¶ 1, 11–12.)

70. As of the date of filing Petitioner does not have a future hearing date. (Ex. E, EOIR Automated Case Information).

## VII. GOVERNING STATUTORY FRAMEWORK

### A.) Section 1226(a) Governs the Relevant Category of Interior Detention

71. Section 1226(a) establishes the general framework for arresting and detaining certain noncitizens pending a decision on removal.

72. Unlike § 1226(c), which imposes mandatory detention for specified categories, § 1226(a) permits the government to detain or release eligible individuals on bond or conditional parole. Nielsen v. Preap, 586 U.S. 392, 396 (2019).

73. In *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026), the Ninth Circuit held that noncitizens present without admission who were apprehended in the interior are not subject to mandatory detention under § 1225(b)(2)(A) solely because they entered without inspection.

74. The Ninth Circuit instead identified § 1226 as the governing detention framework for that population, subject to applicable exceptions.

75. Petitioner entered in approximately 2002 and was arrested in Victorville in 2026. He was not apprehended upon arrival or while seeking admission at the border.

76. The government's NTA charges only inadmissibility based on presence without admission or parole.

77. On the grounds presently set forth in DHS's records, Petitioner's custody is therefore subject to the statutory framework addressed in *Rodriguez Vazquez*.

78. If Respondents contend another mandatory detention provision applies, they must identify and substantiate that claimed authority.

**B.) Section 1226(a) Establishes a Warrant-Based Arrest Framework**

79. Section 1226(a) authorizes detention pending removal proceedings following an arrest on a warrant issued under the Attorney General's authority.

80. The implementing regulation, 8 C.F.R. § 236.1(b), provides for arrest under an administrative warrant, including Form I-200, issued by designated officials.

81. Congress separately authorized limited warrantless immigration arrests in 8 U.S.C. § 1357(a)(2).

82. That provision requires reason to believe both that the individual is present in violation of federal immigration law and that the individual is likely to escape before a warrant can be obtained.

83. The Ninth Circuit has recognized that "reason to believe" in this context is equivalent to probable cause. *Tejeda-Mata v. INS*, 626 F.2d 721, 725 (9th Cir. 1980).

84. The regulation implementing the warrantless-arrest authority independently requires that officers obtain a warrant unless there is reason to believe the individual is likely to escape before one can be obtained. 8 C.F.R. § 287.8(c)(2)(ii).

85. The two statutory predicates are distinct. Evidence indicating suspected unlawful immigration status does not automatically establish the likelihood of escape.

**C.) Initial Custody Determinations Are Required After Arrest**

86. Following an immigration arrest without a warrant, the regulations establish procedures for examination, notice, and a timely custody decision.

87. Under 8 C.F.R. § 287.3(a), an individual arrested without a warrant ordinarily must be examined by an appropriate immigration officer.

88. Under § 287.3(d), a determination generally must be made within forty-eight hours whether the

individual will remain in custody or be released on bond or recognizance, subject to the regulation's emergency or extraordinary-circumstance exception.

89. Under 8 C.F.R. § 236.1(c)(8), the initial discretionary custody decision assesses whether release is appropriate in light of danger and likelihood of appearance.

90. Section 236.1(g) provides for notification of the initial custody determination. Under 8 C.F.R. §§ 1003.19 and 1236.1(d)(1), eligible individuals may seek an immigration judge's custody redetermination.

91. These protections are not meaningless formalities. They provide a mechanism for deciding whether custody is necessary and for communicating the opportunity to obtain independent review.

92. In *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 (9th Cir. 2022), the Ninth Circuit recognized the substantial procedural protections available under § 1226(a), including individualized custody review, access to a neutral decisionmaker, presentation of evidence, administrative appeal, and reconsideration following material changes in circumstances.

93. More recently, *Sanchez Marquez* explained that the initial custody process serves the important purpose of ensuring that detention under § 1226(a) reflects an individualized decision rather than an effectively automatic confinement regime. No. 5:26-cv-05368-MBK, Dkt. 13, at 5–11.

## VIII. EXHAUSTION OF ADMINISTRATIVE REMEDIES

94. Petitioner acknowledges that he has not requested a bond hearing before an immigration judge.

95. Nevertheless, exhaustion of administrative remedies in § 2241 detention litigation is generally prudential rather than jurisdictional.

96. The Ninth Circuit permits courts to excuse prudential exhaustion where administrative remedies would be inadequate or ineffective, pursuit would be futile, or irreparable injury would result. *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004).

97. The relevant considerations include whether agency expertise is necessary to develop the record, whether excusing exhaustion would encourage deliberate bypass of an administrative scheme, and

whether administrative review is likely to correct the asserted error. *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007).

98. Petitioner's principal claims concern the legality of the August 30, 2026 arrest and compliance with initial detention procedures. These claims are distinct from a request that an immigration judge exercise discretion to grant bond. A conventional bond hearing evaluates whether the person should remain detained based on danger, flight risk, and the applicable custody standards. It does not necessarily adjudicate whether the arresting officers lawfully dispensed with an administrative warrant or whether the initial custody requirements were satisfied.

99. In *Barrios Chan*, the Central District excused prudential exhaustion notwithstanding the availability of an initial bond hearing, reasoning that subsequent bond proceedings would not adequately remedy the challenged original deprivation of liberty. No. 5:26-cv-04820-ACCV, Dkt. 12, at 3–4.

100. The same distinction applies here. Petitioner's claim is not simply that he should receive a favorable bond determination. It is that his initial arrest and resulting custody lacked lawful justification.

101. Petitioner recognizes that a bond hearing may afford a meaningful prospective avenue for release. He does not contend that seeking bond is categorically futile. But requiring him to exhaust that separate discretionary process before obtaining review of his independent statutory arrest claim would not necessarily provide an adequate remedy for the asserted illegality.

102. Continued detention while pursuing administrative review would perpetuate the very deprivation of liberty that Petitioner alleges began without lawful authority. Accordingly, Petitioner respectfully requests that this Court excuse prudential exhaustion as to his independent arrest and initial-custody claims.

103. Alternatively, should the Court conclude that additional administrative custody proceedings are appropriate, Petitioner requests that the Court order prompt individualized review while retaining jurisdiction over his independent challenge to the initial arrest.

## IX. IMMEDIATE RELEASE IS THE APPROPRIATE HABEAS REMEDY

104. The traditional function of habeas corpus is to secure release from unlawful custody. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

105. Petitioner requests release as the primary remedy because his challenge concerns the authority for the initial arrest and the lawfulness of the resulting detention.

106. An order directing only a future bond hearing would not necessarily determine whether immigration officers complied with § 1357(a)(2) when they initially deprived Petitioner of his freedom. Nor would a subsequent bond hearing necessarily remedy the failure to conduct a required initial custody determination.

107. In *Barrios Chan*, the Central District ordered immediate release following an unlawful warrantless immigration arrest. No. 5:26-cv-04820-ACCV, Dkt. 12, at 6–7.

108. In *Sanchez Marquez*, the court ordered immediate release after finding that ICE failed to establish the required arrest justification and initial custody review. No. 5:26-cv-05368-MBK, Dkt. 13, at 12–16.

109. In *Torres Vidal v. Mullin*, No. 5:26-cv-03582-SP, Dkt. 11 (C.D. Cal. Sept. 22, 2026), the court granted habeas relief and ordered immediate release following a procedural due process violation involving immigration detention after an enforcement operation targeting another individual.

110. These decisions are persuasive rather than universally controlling on the appropriate remedy. The Court must assess the actual facts and legal authority presented in this case. Nevertheless, their reasoning demonstrates that immediate release is an available and appropriate habeas remedy where civil immigration confinement rests upon an unlawful initial arrest or a material failure to comply with procedures necessary to justify custody.

111. Petitioner's longstanding residence, cooperation during the encounter, stable home, work history, and available family connections further support a remedy that restores his liberty while permitting immigration proceedings to continue.

112. Release from detention would not terminate the government's authority to pursue removal proceedings or relieve Petitioner of his obligation to attend immigration court and comply with lawful requirements.

113. Petitioner accordingly requests a writ directing Respondents to release him immediately.

114. Alternatively, should the Court determine that immediate release is not warranted, Petitioner requests a prompt individualized custody hearing under § 1226(a), with a deadline fixed by the Court and appropriate relief if Respondents fail to comply.

**X. POTENTIAL DISCRIMINATORY SELECTION AND PRESERVATION OF RELATED EVIDENCE**

115. Petitioner further submits that the circumstances of the enforcement operation warrant examination of whether impermissible demographic or occupational assumptions influenced the officers' decision to select him for immigration investigation. The officers were searching for another individual when they encountered Petitioner, who was operating a landscaping truck at a car wash. Petitioner alleges that the officers restricted his freedom of movement before questioning him concerning citizenship or immigration status. (Perez-Orozco Decl. ¶¶ 4–7, 10; Ex. A.)

116. The equal-protection component of the Fifth Amendment prohibits federal officers from intentionally discriminating on the basis of race or ethnicity. *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954); *Whren v. United States*, 517 U.S. 806, 813 (1996). Discriminatory purpose may be established through direct or circumstantial evidence, including the sequence of events, relevant enforcement practices, departures from ordinary procedures, and contemporaneous statements. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265–68 (1977).

117. Petitioner does not presently allege that discriminatory intent has been established. Rather, he submits that the circumstances of the encounter warrant preservation of relevant evidence and, if

good cause is demonstrated, limited discovery concerning the objective basis for the officers' initial seizure and the circumstances surrounding their selection of Petitioner.

118. Petitioner expressly preserves the ability to seek leave to amend this Petition if subsequently obtained evidence establishes a good-faith factual basis for an independent discriminatory-enforcement claim under the equal-protection component of the Fifth Amendment. No separate finding of intentional discrimination is requested on the present record.

## XI. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF - Violation of 8 U.S.C. §§ 1226(a) and 1357(a)(2) and 8 C.F.R. §§ 236.1(b) and 287.8(c)(2) (Unlawful Warrantless Arrest)

119. Petitioner re-alleges and incorporates by reference all preceding paragraphs of this Petition as if fully set forth herein.

120. ICE arrested Petitioner during an operation directed at a different individual. The officers had not identified him as their enforcement target before the encounter.

121. Petitioner was parked at a car wash, cooperated with questioning, supplied identification, and did not actually flee or physically resist.

122. The I-213 documents the alleged basis for concluding that Petitioner lacked lawful immigration status but identifies no individualized facts demonstrating that he was likely to escape before an administrative arrest warrant could be obtained.

123. Under § 1357(a)(2), the government must satisfy the likelihood-of-escape requirement independently of the immigration-status requirement.

124. The Supreme Court has recognized that officers acting without a federal immigration warrant possess more limited authority. *Arizona v. United States*, 567 U.S. 387, 408 (2012).

125. The statutory distinction is especially important when an individual is apprehended during an operation targeting someone else. The fact that ICE lawfully sought another individual does not automatically authorize the warrantless arrest of everyone encountered during that operation.

126. In *Barrios Chan*, the Central District ordered immediate release after finding that ICE arrested a noncitizen without a warrant and without establishing probable cause to believe that he posed a risk of escape. No. 5:26-cv-04820-ACCV, Dkt. 12, at 4–7.

127. The court emphasized that an individual encountered during an enforcement operation targeting someone else cannot be subjected to a warrantless civil immigration arrest without the statutory prerequisites being met.

128. In *Sanchez Marquez*, the court likewise ordered release where ICE failed to establish a proper pre-arrest escape-risk justification. No. 5:26-cv-05368-MBK, Dkt. 13, at 12–16.

129. The *Sanchez Marquez* court considered evidence concerning an administrative arrest warrant but concluded that the record established a warrantless arrest and lacked support for the required escape-risk analysis. The court also found no adequate evidence of an initial custody determination.

130. These decisions establish persuasive authority that statutory arrest requirements must be satisfied at the time of the arrest, not supplied retroactively merely because DHS later concludes that the arrested person is removable.

131. Here, the contemporaneous records presently available identify no pre-arrest warrant and no individualized justification for dispensing with one.

132. Respondents should therefore be required to produce any Form I-200, its creation and approval records, and evidence of the facts known to the arresting officers concerning an imminent risk of escape.

133. If Respondents cannot establish that a valid warrant existed or that the warrantless-arrest exception applied, Petitioner's arrest violated 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2).

134. Petitioner further contends that, under the particular circumstances of his case, the resulting detention is unlawful and immediate release is an appropriate remedy under § 2241.

**SECOND CLAIM FOR RELIEF - Violation of the Fourth Amendment and 8 C.F.R. § 287.8(b)(1)–(2) (Unlawful Investigatory Seizure Without Individualized Reasonable Suspicion)**

135. Petitioner re-alleges and incorporates by reference all preceding paragraphs.

136. The Fourth Amendment protects individuals against unreasonable seizures of their persons, including investigatory seizures conducted by federal immigration officers. A brief investigatory detention must be supported by reasonable suspicion based upon specific, articulable facts and rational inferences reasonably suggesting unlawful conduct or unlawful immigration status. *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968); *United States v. Brignoni-Ponce*, 422 U.S. 873, 884–85 (1975).

137. Federal immigration regulations expressly distinguish consensual questioning from detention. Under 8 C.F.R. § 287.8(b)(1), an immigration officer may question an individual so long as the officer does not restrain that individual's freedom to walk away. Under § 287.8(b)(2), officers may briefly detain an individual for questioning only upon reasonable suspicion supported by specific, articulable facts indicating that the individual is unlawfully present or engaged in a federal offense.

138. An encounter becomes a Fourth Amendment seizure when, considering the totality of the circumstances, an officer's physical force or show of authority would cause a reasonable person to believe that he was not free to terminate the encounter. *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). The constitutional justification for an investigatory seizure must exist when the seizure begins.

139. In *United States v. Manzo-Jurado*, 457 F.3d 928 (9th Cir. 2006), the Ninth Circuit held that an officer's command to occupants of a work truck constituted a seizure before an occupant admitted being unlawfully present. The court concluded that the officers lacked reasonable suspicion where their observations amounted to generalized characteristics associated with a Hispanic work crew and otherwise innocent conduct.

140. Similarly, the Supreme Court held in *Brignoni-Ponce* that officers may not stop a vehicle to investigate immigration status based solely on the occupants' apparent Mexican ancestry. 422 U.S. at 886–87. The Ninth Circuit has likewise cautioned against reliance on broad demographic profiles

in place of particularized suspicion. *United States v. Montero-Camargo*, 208 F.3d 1122, 1131–35 (9th Cir. 2000) (en banc).

141. Here, ICE officers were conducting an enforcement operation directed at an individual other than Petitioner. Their encounter with Petitioner occurred while he was parking his Ford F-150 pickup truck at a car wash in Victorville, California.

142. Petitioner's vehicle contained landscaping and construction tools and displayed a sign advertising his landscaping and gardening services. Those characteristics were consistent with his ordinary work activities. The available record does not identify any criminal conduct, immigration violation, or other individualized suspicious activity observed before officers restricted Petitioner's freedom of movement.

143. Petitioner alleges that officers had already restricted his ability to leave before questioning him about citizenship and immigration status. The encounter therefore presents a materially disputed question whether officers initiated a nonconsensual investigatory detention without the reasonable suspicion required by the Fourth Amendment and 8 C.F.R. § 287.8(b)(2).

144. The government's Form I-213 characterizes the encounter as consensual but does not identify specific, articulable facts establishing reasonable suspicion at the point Petitioner's movement was first restrained. The fact that the officers were looking for another individual does not automatically establish reasonable suspicion concerning Petitioner.

145. Even when the totality of the circumstances is considered, generalized observations concerning a person's occupation, work vehicle, or location cannot replace an objective basis particularized to the individual being seized. *See Manzo-Jurado*, 457 F.3d at 937–40; *Montero-Camargo*, 208 F.3d at 1131–35.

146. Petitioner's subsequent statements regarding citizenship and immigration status cannot retroactively justify a seizure that began before those statements were made. *Manzo-Jurado*, 457 F.3d at 932–33.

147. Petitioner further alleges that the officers proceeded from the investigatory detention to a custodial arrest without presenting an arrest warrant or establishing the separate likelihood-of-escape requirement of 8 U.S.C. § 1357(a)(2). The legality of the initial seizure and the legality of the subsequent arrest are distinct questions, and both require an independent lawful justification.

148. The existence of body-worn-camera footage, expressly acknowledged in DHS's Form I-213, provides a direct means of assessing when the seizure began, whether the encounter was genuinely consensual, and what facts were available to the officers before Petitioner's immigration-status statements.

149. Accordingly, Petitioner requests a determination that his initial detention violated the Fourth Amendment and 8 C.F.R. § 287.8(b)(2) if officers restrained his freedom of movement before acquiring individualized reasonable suspicion. Petitioner further requests habeas relief to the extent that the unlawful seizure, together with the subsequent arrest and custody violations alleged herein, rendered his resulting confinement unlawful.

**THIRD CLAIM FOR RELIEF - Violation of 8 U.S.C. § 1226(a), 8 C.F.R. §§ 236.1(c), 236.1(g), and 287.3(d), and the Fifth Amendment (Failure to Establish Compliance with Required Initial Custody Procedures)**

150. Petitioner re-alleges and incorporates by reference all preceding paragraphs.

151. Section 1226(a) establishes a discretionary custody framework. For persons not subject to an independently applicable mandatory detention provision, DHS must determine whether continued confinement is warranted under the applicable procedures.

152. The regulations require an initial custody determination and provide a mechanism for notifying detainees of that determination and obtaining review. 8 C.F.R. §§ 236.1(c), 236.1(g), 287.3(d), 1236.1(d)(1).

153. Petitioner has remained in custody since August 30, 2026. No Form I-286 has been supplied among the documents presently available to Petitioner's counsel. Nor have Respondents produced a

contemporaneous individualized determination explaining the necessity for Petitioner's initial continued confinement.

154. Petitioner recognizes that the absence of those documents from counsel's possession does not conclusively establish that DHS failed to prepare them.

155. But the distinction is material and readily resolvable through production of Respondents' contemporaneous custody records.

156. In *Sanchez Marquez*, the Central District specifically recognized that §§ 1226(a) and 287.3(d) require individualized initial custody procedures, and that failure to provide those protections may render detention unlawful from the outset. No. 5:26-cv-05368-MBK, Dkt. 13, at 5–16.

157. The court emphasized that the later opportunity to request a bond hearing does not necessarily replace the initial custody determination that should have occurred under the applicable framework.

158. The same principle is relevant here. Petitioner has not requested an IJ bond hearing, but that fact does not relieve DHS of its independent obligation to perform the initial custody procedures required by law.

159. If Respondents cannot establish timely and lawful compliance with those requirements, Petitioner's detention has proceeded without the process necessary to justify the initial deprivation of liberty.

160. Petitioner therefore seeks an order requiring production of the Form I-286 and related custody records, and a determination that his detention violates federal law and due process if the required initial custody procedures were not provided.

**FOUTH CLAIM FOR RELIEF - Violation of 8 U.S.C. § 1226(a) (Unlawful Application of Mandatory Detention under § 1225(b)(2)(A))**

161. Petitioner re-alleges and incorporates by reference all preceding paragraphs.

162. The governing detention statute is determined by the individual's circumstances and the specific authority Congress has granted.

163. In *Rodriguez Vazquez*, the Ninth Circuit held that noncitizens who entered without admission and were subsequently apprehended in the interior are governed by the detention framework of § 1226 rather than § 1225(b)(2)(A).

164. Petitioner entered the United States approximately twenty-four years before his arrest and was living in Victorville when apprehended.

165. He was not seeking admission at the border, was not apprehended upon arrival, and was not detained in connection with a recent entry.

166. DHS issued an NTA charging inadmissibility under § 1182(a)(6)(A)(i) and initiated regular removal proceedings under INA § 240.

167. Accordingly, the fact of Petitioner's entry without inspection does not, by itself, authorize mandatory detention under § 1225(b)(2)(A).

168. If Respondents contend Petitioner is categorically ineligible for bond solely because he entered without inspection, that interpretation conflicts with *Rodriguez Vazquez*.

169. Petitioner does not ask this Court to presume away a separate mandatory detention provision if one is legally established. Rather, he requests that Respondents be required to identify and substantiate any such provision instead of applying an impermissibly broad interpretation of § 1225(b)(2)(A).

170. On the grounds currently stated in the NTA and I-213, the detention framework applicable to Petitioner is § 1226, and any continued confinement must be justified under the legally governing provision and procedures.

**FIFTH CLAIM FOR RELIEF - Violation of the Fifth Amendment to the United States Constitution (Unconstitutional Deprivation of Liberty)**

171. Petitioner re-alleges and incorporates by reference all preceding paragraphs.

172. The Fifth Amendment prohibits the federal government from depriving any person of liberty without due process of law.

173. The Due Process Clause protects noncitizens physically present in the United States. *Zadvydas*, 533 U.S. at 693–94.

174. Freedom from physical confinement is a fundamental liberty interest. *Id.* at 690.

175. Civil immigration detention is designed to serve legitimate regulatory purposes, principally ensuring appearance at immigration proceedings and protecting the community. It is not a form of criminal punishment.

176. The government's detention authority must therefore be exercised within the limitations Congress prescribed and with constitutionally sufficient procedures.

177. The adequacy of procedures may be evaluated under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), which considers the private liberty interest, the risk of erroneous deprivation and value of additional safeguards, and the government's interests.

178. Petitioner's liberty interest is substantial. He lived in the United States for approximately twenty-four years before his arrest, maintained a stable residence, and supported himself through landscaping and related work.

179. He was arrested during an operation directed at another individual, and the government's presently available records contain no particularized escape justification or documented initial custody determination.

180. These circumstances create a substantial question whether his deprivation of liberty occurred without the safeguards required by the governing statutes and regulations.

181. The requested procedures would materially reduce the risk of erroneous detention. The government can produce the warrant, if any; the contemporaneous records supporting any claimed exception to the warrant requirement; the initial custody determination; and the body-worn-camera footage.

182. The government's legitimate interest in immigration enforcement does not include authority to disregard statutory arrest prerequisites or to transform discretionary detention into effectively automatic confinement.

183. The Ninth Circuit has recognized that § 1226(a) provides substantial procedural protections, including individualized review and the opportunity to seek a bond hearing. *Rodriguez Diaz*, 53 F.4th at 1202.

184. In *Sanchez Marquez*, the Central District concluded that the failure to establish the required initial arrest and custody procedures rendered detention unlawful and justified release. No. 5:26-cv-05368-MBK, Dkt. 13, at 12–16.

185. Petitioner's claim is not that forty-one days of detention automatically constitutes unconstitutional prolonged detention. Rather, it is that his initial arrest and subsequent confinement allegedly occurred without the statutory authority and procedural protections necessary to justify that deprivation from the outset.

186. Petitioner therefore requests a determination that his continued confinement violates due process to the extent Respondents cannot establish compliance with the governing arrest and initial custody requirements.

## XII. PRAYER FOR RELIEF

WHEREFORE, Petitioner Sergio Perez-Orozco respectfully requests that this Court:

a. Exercise jurisdiction pursuant to 28 U.S.C. § 2241;

b. Issue an expedited Order to Show Cause requiring Respondents to establish the lawful basis for Petitioner's arrest and continued detention;

c. Determine whether ICE officers subjected Petitioner to a nonconsensual investigatory seizure without individualized reasonable suspicion, in violation of the Fourth Amendment and 8 C.F.R. § 287.8(b)(2);

d. Determine whether officers possessed reasonable suspicion at the inception of the seizure, without relying retroactively upon statements obtained after Petitioner's freedom of movement had already been restrained;

e. Determine whether Respondents complied with 8 U.S.C. §§ 1226(a) and 1357(a)(2), and 8 C.F.R. § 287.8(c)(2), including the requirements governing administrative arrest warrants and warrantless immigration arrests;

f. Declare Petitioner's arrest unlawful if Respondents cannot establish a valid warrant authorizing the arrest or the statutory prerequisites permitting a warrantless arrest;

g. Determine whether Respondents complied with the initial custody requirements of 8 C.F.R. §§ 236.1(c), 236.1(g), and 287.3(d);

h. Direct Respondents to preserve all body-worn-camera recordings and relevant contemporaneous records relating to the August 30, 2026 enforcement operation, and permit appropriately limited discovery upon a showing of good cause;

i. Grant the Petition for Writ of Habeas Corpus and ORDER Respondents to release Sergio Perez-Orozco, A248-004-711, immediately from immigration detention;

j. Enjoin Respondents from re-detaining Petitioner on the basis of the challenged unlawful arrest or custody determination without compliance with applicable statutory and constitutional requirements;

k. Alternatively, if immediate release is denied, direct Respondents to provide an expedited individualized custody hearing under the correct statutory framework within seven days, or such other period established by the Court;

l. Prohibit transfer of Petitioner outside the Central District while this action remains pending, to the extent necessary to preserve jurisdiction or the effectiveness of the requested relief;;

m. Award Petitioner his costs and reasonable attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, and any other applicable authority; and

n. Grant such other and further relief as the Court deems just and proper.

I affirm, under penalty of perjury, that the foregoing is true and correct.

Dated: October 21, 2026

**ATTORNEY FOR PETITIONER**

Osvaldo A. Vargas
VARGAS LAW FIRM
100 N. Citrus St. Suite# 505
West Covina, CA 91791
Phone: (626) 269-3432
Fax: (626) 364-7597
ovargaslaw@gmail.com
*Pro Bono Counsel for Petitioner*

## XIII. EXHIBIT LIST

Petitioner anticipates attaching the following exhibits:

- Exhibit A: Form I-213, Record of Deportable / Inadmissible Alien
- Exhibit B: Form I-862, Notice to Appear
- Exhibit C: Written Pleadings
- Exhibit D: Hearing Notice
- Exhibit E: EOIR Automated Case Information

# VERIFICATION PURSUANT TO 28 U.S.C. § 2242

I represent the Petitioner, Sergio Perez-Orozco and submit this verification on his behalf. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated: October 21, 2026

**ATTORNEY FOR PETITIONER**

Osvaldo A. Vargas
VARGAS LAW FIRM
100 N. Citrus St. Suite# 505
West Covina, CA 91791
Phone: (626) 269-3432
Fax: (626) 364-7597
ovargaslaw@gmail.com
*Pro Bono Counsel for Petitioner*